IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEROY TAYLOR, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-022-CJP[1] |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social | ) |
| Security, | ) |
| | ) |
|       Defendant. | ) |

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Leroy Taylor, represented by counsel, seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Mr. Taylor applied for benefits in May 2012, alleging disability beginning on February 1, 2012. (Tr. 18). After holding an evidentiary hearing, ALJ Lee Lewin denied the application for benefits in a decision dated September 5, 2013. (Tr. 18-29). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 9.

## Issue Raised by Plaintiff

For his sole point, plaintiff argues that the ALJ erred in ignoring a witness statement submitted by his wife.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  20 C.F.R. §§ 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the

> impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled.... If a claimant reaches step 5, the burden shifts to the ALJ to

establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Mr. Taylor was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Lewin followed the five-step analytical framework described above. She

determined that Mr. Taylor had not been engaged in substantial gainful activity since the date of his application, and he is insured for DIB through December 31, 2017.

The ALJ found that plaintiff had severe impairments of obesity, above-the-knee amputation of the right leg, degenerative disc disease of the lumbar spine, hypertension and depression/anxiety. She further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that Mr. Taylor had the residual functional capacity (RFC) to perform work at the sedentary exertional level, with a number of physical and mental limitations. Based upon the testimony of a vocational expert, the ALJ found that plaintiff was unable to do his past work. However, she also concluded that he was not disabled because he was able to do other jobs which exist in significant numbers in the local and national economies.

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the point raised by plaintiff and is confined to the relevant time period.

1. **Agency Forms**

Plaintiff was born in 1970 and was almost 42 years old on the alleged onset date. (Tr. 183). He had worked as a die service supervisor from 1989 to February 2012. (Tr. 185). He stopped working because he was terminated after he hurt his back at work. (Tr. 193).

In a Function Report dated July 25, 2012, plaintiff stated that he had pain while walking and sitting due to his leg amputation and back injury. He tried to help out around the house by mowing the yard on a riding mower and folding laundry while seated. He prepared simple food like sandwiches or frozen dinners. He said he could walk for about 30 feet. He went to church on Sundays and went to his children's taekwondo sessions. He leg was amputated in 2008, and he had used a prosthetic, walker, crutches and cane since then. (Tr. 215-223).

Plaintiff's wife Stacy Taylor filed a Function Report dated July 20, 2012. She stated that plaintiff could not stand for more than 10 minutes, could not walk for more than 25 feet, and could sit for only 30 to 45 minutes in one position. She stated that he folded laundry while sitting and mowed the yard with a riding mower. She stated that plaintiff went to church and to his children's taekwondo practice on a regular basis. (Tr. 203-210).

### 3. Evidentiary Hearing

Mr. Taylor was represented by an attorney at the evidentiary hearing on August 20, 2013. (Tr. 35).

Mr. Taylor worked a lead man over a die service at Spartan Light Metals for over 20 years. His leg was amputated after an accident in 2008. He returned to work after that. (Tr. 44-45). On January 23, 2012, he fell and hurt his back at work. (Tr. 47).

Plaintiff testified that he had not been to church in a year and a half to two years. He went to his stepson's baseball games. Back in July 2012, his daughter and stepson were in taekwondo, and he went to their practices. (Tr. 43-44).

A vocational expert also testified. The ALJ asked her a hypothetical question that comported with the ultimate RFC findings. She testified that the hypothetical person could not do plaintiff's past work, but he could do other jobs such as address clerk and circuit board assembler. (Tr. 75-77).

### 3. Medical Records

In view of the sole point raised, the Court will not set forth a detailed review of the medical records.

Plaintiff's primary care physician was Dr. Elvira Salarda. Dr. Salarda diagnosed depression and began prescribing medication for depression as early as March 2010. (Tr. 366). On January 23, 2012, she saw him for back pain. He told her had injured his back at work. (Tr. 332-333). X-rays showed no acute spinal injury. He had mild anterior wedging of T12 that was likely developmental. (Tr. 330).

A lumbar MRI done in September 2012 showed degenerative disc changes at L4-5 with annular tear and noncompressive disc bulge, and mild facet joint degenerative changes at L4-5 and L5-S1. (Tr. 282).

### 4. Consultative Physical Exam

Dr. Adrian Feinerman performed a consultative physical exam on August 2, 2012. Dr. Feinerman noted that plaintiff's right leg was amputated following a motorcycle accident in 2008. He walked with a prosthesis and used a cane for balance. He complained of low back pain since 2005, and said that he had suffered from depression for 9 years. On exam, plaintiff was 6'3" tall and weighed 242 pounds. He had a full range of motion of the back. Straight leg raising was

negative. Muscle strength was normal throughout, with no spasm or atrophy. Dr. Feinerman concluded that plaintiff was able to sit and stand normally, and to lift, carry and handle objects without difficulty. (Tr. 256-266).

## Analysis

Plaintiff's sole point concerns the ALJ's handling of his wife's statement. Both Mr. and Mrs. Taylor submitted Function Reports in July 2012. Mrs. Taylor's statement was designated as Exhibit 4E by the agency, and is located at Tr. 200-210. Mr. Taylor's statement was designated as Exhibit 5E and is located at Tr. 211-223. Mrs. Taylor's statement generally corroborates the information provided by Mr. Taylor in his statement.

The only mention of Exhibit 4E by the ALJ is at Tr. 26. The ALJ was discussing plaintiff's credibility, and pointed out a number of ways in which she believed that plaintiff's testimony was contradicted by other evidence in the record. Among those contradictions, she identified the fact that plaintiff testified that he had not been to church in 2 years, "but stated in his function report dated July 2012 that he attends church weekly. (Ex. 4E)." Exhibit 4E is, however, the statement of plaintiff's wife, and not of plaintiff.

Although she cited to the wrong exhibit number, the ALJ's point was correct. In his own July 2012 statement (Exhibit 5E), plaintiff did, in fact, say that he attended church weekly. (Tr. 219).

Notably, plaintiff does not challenge the ALJ's credibility determination as to his own testimony. Rather, he argues that the ALJ erred in failing to consider and assess the credibility of his wife's statement. It is true that the ALJ is supposed to

Page **8** of **9**

consider all of the evidence, including statements submitted by third parties. 20 C.F.R. §404.1529(c)(3). However, the ALJ is not required to evaluate in writing every piece of evidence. In particular, she is not required to explicitly discuss a third party statement where the statement is not a separate line of evidence, but only serves to corroborate the plaintiff's testimony and is therefore "essentially redundant." *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996); *Carlson v. Shalala*, 999 F.2d 180, 182 (7th Cir. 1993).

The ALJ found that plaintiff's allegations were not credible. Plaintiff does not challenge that finding. Because Mrs. Taylor's statement simply corroborated plaintiff's allegations, the ALJ did not err in failing to explicitly discuss and weigh her statement.

## Conclusion

After careful review of the record as a whole, the Court finds that plaintiff has not identified any error of law committed by the ALJ, and has not demonstrated that the ALJ's decision lacked substantial support. Accordingly, the final decision of the Commissioner of Social Security denying Leroy Taylor's application for disability benefits is **AFFIRMED**.

The Clerk of Court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:   December 18, 2015.**

                                  **s/ Clifford J. Proud**
                                  **CLIFFORD J. PROUD**
                                  **UNITED STATES MAGISTRATE JUDGE**